IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WISE FOODS, INC. | : | |
| | : | CIVIL ACTION |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | NO.  21-1261 |
| UFCW HEALTH AND WELFARE | : | |
| FUND OF NORTHEASTERN | : | |
| PENNSYLVANIA, | : | |
| | : | |
| **Defendant.** | : | |

**Goldberg, J.**                                                                                                  **April 5, 2021**

## MEMORANDUM OPINION

Plaintiff Wise Foods, Inc. ("Wise") brings this declaratory judgment action to resolve whether it has failed to make required contributions to a multi-employer welfare benefit trust known as the UFCW Health and Welfare Fund of Northeastern Pennsylvania (the "Fund"). The Fund, through its trustees, has unilaterally scheduled an arbitration for April 9, 2021 on this issue, prompting Wise to file this action, as well as a Motion to Stay Arbitration. For the following reasons, I will deny the Motion to Stay.

**I.        FACTUAL BACKGROUND**

Federal Rule of Civil Procedure 12(b)(6) applies to my review of the factual background in this case. In deciding a motion under Federal Rule of Civil Procedure 12(b)(6), I must accept all factual allegations in the complaint as true, construe the Complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010). The following facts are taken from Wise's Complaint.

The Defendant Fund is a jointly administered multi-employer welfare benefit trust governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, et seq. ("ERISA").  (Compl. ¶ 6.)  Wise is a participating employer in the Fund as a party to a December 3, 2018 collective bargaining agreement ("CBA") with the United Food and Commercial Workers Union, Local 1776 KS ("UFCW").  (Id. ¶ 1 & Ex. 1.)

The CBA requires Wise to make contributions to the Fund.  Under a health benefit plan ("Plan") operated by the Fund, Wise employees are provided with benefit options.  Wise asserts that should an employee participating in the Plan elect a benefit option other than full benefits, it is only required to make contributions to the Fund for the benefits actually elected.  (Id. ¶¶ 2–4.)  Wise presses that, according to the CBA, "[t]he Employer may not be charged a premium for any plan benefit not elected by an employee through the Fund or any of its plans."  (Id., Ex. 1, Art. XVI.)  Wise contends that it has paid all contributions to the Fund for benefits elected by employees and, therefore, has complied with the CBA  (Id. ¶ 7.)

On June 20, 2019, the Fund demanded that Wise make additional contributions as if all of the participating Wise employees elected full benefits under the Plan.  Wise declined and informed the Fund that because the 2018 CBA does not require contributions to the Fund for full benefits when employees have not elected full benefits, it had properly calculated and paid all required contributions to the Fund.  (Id. ¶¶ 8–9.)

Notwithstanding Wise's position, the Fund continued to send notices to Wise requesting additional contributions.  (Id.)   In turn, Wise demanded that the Fund provide: (a) a signed participation agreement applicable to Wise with respect to the Fund, if any; (b) the applicable trust agreement(s) for the Fund; (c) the plan document(s) for the plans offered by the Fund; and (d) any

other documents that support the Fund's contention that full contributions are owed by Wise for employees who do not elect full benefits provided by the Fund's plan. (Id. ¶ 10.)

The Fund informed Wise that UFCW and the contributing employers to the Fund adopted an Agreement and Declaration of Trust ("Trust Agreement") to govern the administration of the Fund, and that the Trust Agreement is the applicable agreement governing contributions. (Compl. ¶ 5 & Ex. 2.) The Fund also indicated that there is no signed participation agreement with any contributing employer, including Wise, and that it does not require a separate participation agreement where the employer and a union have signed a CBA providing for contributions to the Fund. (Id. ¶¶ 11, 20, 21.)

On March 1, 2021, the Fund issued a "Notice to Arbitrate" to Wise regarding the parties' dispute over Wise's required contributions. (Id. ¶ 26 & Ex. 4.) The Notice unilaterally selected an arbitrator and scheduled the arbitration hearing for April 9, 2021, to be conducted by Zoom. (Id. ¶ 27.) The Notice provided:

> Please take further notice that unless within 20 days after service of this notice you apply for a stay of arbitration pursuant to 42 Pa.C.S. § 7304(b), you will be thereafter precluded from objecting that a valid agreement was not made or has not been complied with, and from asserting in a Court the bar of limitation of time.
>
> Please take further notice that this document is to collect an obligation due in accordance with the Employee Retirement Income Security Act of 19874, as amended ("ERISA"), and the Trustees reserve all rights to pursue the collection of the obligation in Federal Court or other appropriate forum in the event that you object to arbitration in accordance with the Trustees' procedures.

(Id., Ex. 4.) The Notice to Arbitrate included a Delinquency Statement indicating that Wise owed contributions from January 1, 2019 through December 31, 2020, plus interest, liquidated damages, attorneys' fees, accountants' fees, and costs of collection, in the amount of no less $710,214.24. (Id. ¶ 29.)

3

Wise responds that it did not agree to participate in arbitration with the Fund. Wise posits that whether it owes contributions to the Fund is an issue involving interpretation of the CBA, which is solely within the province of the federal court. (Id. ¶ 31.)

## II.     STANDARD OF REVIEW

Motions to compel or stay arbitration are assessed under either the Federal Rule of Civil Procedure 12(b)(6) standard for motions to dismiss or the Rule 56 standard for summary judgment. See Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764 (3d Cir. 2013). As one court in this Circuit has explained:

> [W]here the complaint does not establish with clarity that the parties have agreed to arbitrate, or when the party opposing arbitration has come forward with reliable evidence that it did not intend to be bound by an arbitration agreement, a Rule 12(b)(6) standard is not appropriate because the motion cannot be resolved without consideration of evidence outside the pleadings, and, if necessary, further development of the factual record . . . . In such circumstances, the non-movant must be given a limited opportunity to conduct discovery on the narrow issue of whether an arbitration agreement exists . . . . Afterwards, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a Rule 56, summary judgment standard.

Torres v. Rushmore Serv. Ctr., LLC, No. 18-cv-9236, 2018 WL 5669175, at *2 (D.N.J. Oct. 31, 2018) (internal quotations and quotation marks omitted).

The choice between these standards reflects the competing aims of the Federal Arbitration Act ("FAA"). Guidotti, 716 F.3d at 773. On one hand, the FAA's "interest in speedy dispute resolution" encourages application of the swifter Rule 12(b)(6) motion to dismiss standard, which consequentially avoids the "'inherent delay of discovery'" that results from the Rule 56 alternative. Id. at 774 (quoting Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F. Supp. 2d 474, 481 (E.D. Pa. 2011)). On the other hand, the United States Court of Appeals for the Third

Circuit has stressed that at times a "more deliberate pace is required" for review of the arbitrability of disputes, calling for application of Rule 56. Guidotti, 716 F.3d at 774.

The primary indicator of which standard is appropriate is the complaint itself. See Silfee v. Automatic Data Processing, Inc., 696 F. App'x 576, 578 (3d Cir. 2017). "[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." Id. (quoting Guidotti, 716 F.3d at 776). If, however, "the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue" then courts should consider the motion to compel arbitration under a Rule 56 standard. Id. (quoting Guidotti, 716 F.3d at 776). Should a court apply the Rule 56 standard, "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." Guidotti, 716 F.3d at 774.

Here, the Complaint specifically relies on and attaches the following operative documents: the CBA, the Trust Agreement, the Summary Plan Description, and the Notice to Arbitrate. (See Compl., Exs. 1–4.) Although both parties have also referenced evidence outside the Complaint, I conclude that the documents attached to the Complaint are sufficient to determine whether the claims are arbitrable. Thus, I need not consider evidence beyond the Complaint and will apply the Rule 12(b)(6) standard.

In the context of a motion to compel or stay arbitration, Rule 12(b)(6) provides that courts should examine whether there can be any reading of the Complaint that could rightly relieve Plaintiff of the arbitration provision. Parker v. Briad Wenco, LLC, No. 18-cv-04860, 2019 WL

2521537 at *2 (E.D. Pa. May 14, 2019), report and recommendation adopted, 2019 WL 2516059 (E.D. Pa. June 18, 2019) (quotations omitted).  The court examines "the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322–23 (2007).  In addition, the court also "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

### III.   DISCUSSION

"The Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. ("FAA") creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 522 (3d Cir. 2002).  It is well established that, when addressing motions to compel or stay arbitration under the FAA, courts must do so "with a healthy regard for the federal policy favoring arbitration." John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1998) (quoting Moses H. Cone Mem. Hosp., 460 U.S. 1, 24–25 (1983)).  Should a court find there to be "any doubts concerning the scope of arbitrable issues," such doubts "should be resolved in favor of arbitration." Id. (quoting Moses H. Cone, 460 U.S. at 24–25).

The federal inclination towards arbitration is not, however, without limits.  "Regardless of whether the arbitration clause is broad or narrow . . . arbitration is still a creature of contract and a court cannot call for arbitration of matters outside of the scope of the arbitration clause." United Steelworkers of Am., AFL-CIO-CLC v. Rohm and Haas Co., 522 F.3d 324, 332 (3d Cir. 2008).

6

Parties cannot be compelled to arbitrate disputes which they did not agree to arbitrate. See Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 299 (2010). Arbitration thus provides "a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." Id. (emphasis in original) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995)). In order to compel arbitration, I must consider the two-prong assessment established by the United States Court of Appeals for the Third Circuit, which requires that: (1) a valid arbitration agreement exists; and (2) such an agreement encompasses plaintiff's asserted claims. Id. at 137.

The question before me is whether Plaintiff has contractually agreed to arbitrate disputes relating to its contributions to the Fund. The CBA signed by both Wise and UFCW provides that Wise shall make contributions to the Fund for health and welfare benefits. (Compl., Ex. 1, Art. XVI.) But beyond that provision, the CBA is silent as to how to handle disputes over such contributions. The Fund itself is governed by a Trust Agreement (Compl, Ex. 2), which, according to the Fund, binds wise and permits the Trustees to demand arbitration. Wise responds that because the CBA did not explicitly incorporate by reference the Trust Agreement, it is not binding and, in any event, the Trust Agreement contains no express language requiring arbitration.

The case of Teamsters-Employer Local No. 945 Pension Fund v. Acme Sanitation Corp., 963 F. Supp. 340 (D.N.J. 1997) is instructive as to whether the Trust Agreement is applicable. There, an employer allegedly failed to pay the requisite contributions into a pension fund and welfare fund. Id. at 344. The Funds proceeded to arbitration and obtained an arbitration award against the employer, who failed to appear at the arbitration hearing. The Funds then sought to enforce the arbitration award in federal court. Id. The trust agreement governing the Funds permitted the Trustees to compel payment "in any manner which they deemed proper" and to "take

any action deemed necessary to enforce payment of the contributions due hereunder including, but not limited to, proceedings at law or equity." Id. at 345–46.  The employer contended that it was not bound to the language in the trust agreement because the collective bargaining agreements, to which it was a party, did not reference the trust agreement.  Id. at 346.

The District Court disagreed with the employer and found the trust agreement was operative.  Citing to the Eleventh Circuit's decision in Plumbers and Steamfitters Local No. 150 Pension Fund v. Vertex Construction Co., 932 F.2d 1443 (11th Cir. 1991), the District Court stated that "an employer who, pursuant to a collective bargaining agreement makes contributions to an employee benefit trust fund governed by ERISA, is bound by the trust agreement for that fund, despite the fact that the trust agreement is not incorporated in the collective bargaining agreement." Teamsters-Employer, 963 F. Supp. at 347 (quoting Vertex, 932 F.3d at 1450).  The District Court found that,

> [W]hile [the employer] was not a signatory to the [trust agreement], it was a signatory to the Collective Bargaining Agreements through which it was obligated to remit contributions to the Funds. [The employer] contributed to the Funds with the intent of receiving a benefit—coverage for its employees.  This mutuality works to bind [the employer] to the terms established by the Trustee to ensure the viability of this benefit.

Id. at 348, n.10.  Because the trust agreement "granted the Trustees broad measures to collect delinquent contributions," the District Court concluded that the Trustees had the authority to proceed to arbitration.[1]  Id. at 349–50.

---

[1] Citing to two other federal decisions, Wise contends that the Eleventh Circuit's holding in Vertex has been criticized and/or limited.  I find both cited cases inapposite.

In Jaspan v. Glover Bottled Gas Corp., 80 F.3d 38, 40–42 (2d Cir. 1996), trustees of employee benefit funds brought action against a contributing employer to compel production of employer's books and records for audit, and for monetary relief.  Id. at 38–39.  The employer asserted that it did not sign the Trust Agreement or reference it in the collective bargaining agreement, and thus could not be bound by the Trust Agreement's liquidated damages provision.  Id. at 40–41.  The Second Circuit recognized that although a non-signatory contributing employer could be held to the terms of trust agreements governing funds to which they contributed, it declined to find that by undertaking in a collective bargaining agreement to pay contributions to certain benefit funds, the employer bound

Although the Third Circuit has not yet ruled on whether an employer, by virtue of signing a CBA requiring it to contribute to a fund, is impliedly bound by the terms of the fund's trust agreement, other federal courts have taken the same approach as both Teamsters-Employer and Vertex.  See, e.g., Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp., 920 F.2d 1491 (9th Cir. 1990) (holding that even though collective bargaining agreement failed to incorporate the terms of the Trust Agreement, once the employer made contributions to the Fund and, thus, intended its employees to receive benefits from the fund, the Trust agreement governing the fund bound the employer to its terms); Bd. of Trustees of Int'l Union of Operating Eng'rs Local 825 Pension Fund v. RiverFront Recycling Aggregate, LLC, No. 15-cv-8957, 2016 WL 6804869, at *8 (D.N.J. Nov. 16, 2016) (holding that employer, by contributing to and availing itself of the benefits of the fund, "subjected itself to the rules that govern the Fund . . ."); Graphic Arts Indus. Joint Pension Trust v. Hatcher Press, Inc., No. 10-cv-1028, 2011 WL 5149124, at *2 (D.D.C. Oct. 28, 2011) ("Although not a signatory to the Trust Agreement, [the employer] is bound by the Trust Agreement's terms because [the employer] expects the Fund to pay benefits to its employees."); Chicago Area I.B. of T. Health and Welfare Trust Fund v. Battaglia Distributing Co., Inc., No. 94-cv-6488, 1995 WL 51494, at *2 (N.D. Ill. 1995) ("Defendant's participation in the plan, through its agreement with Local 703, may be sufficient to bind it to the contribution requirement even if the collective bargaining agreement does not explicitly incorporate the terms of the plan.").

I find the reasoning of these decisions convincing.  Here, although the Trust Agreement has no express arbitration provision, it provides for the Fund to be managed by a Board of Trustees

---

itself to *all* of the terms of the trust agreement to which it was not an express signatory, such as the liquidated damages provision.  Id. at 41–42.  Because the liquidated damages provision was not essential to the trustee's "fundamental duty to locate and take control of fund property," the Second Circuit would not extend Vertex's reach.  Id. at 41.

In Bricklayers & Trowel Trades Int'l Pension Fund v. Kel-Tech Construction, Inc., 319 F. Supp. 3d 330 (D.D.C. 2019), the United States District Court for the District of Columbia acknowledged the Vertex and Jaspan decisions, but "decline[ed] to weigh in on this issue at this point" because the funds in that case had not asserted any legal or factual theory which would bind the employer to the trust agreement.  Id. at 343.

consisting of three employer Trustees and three UFCW Trustees.  (Id. at Art. III § 1.)  Pursuant to Article V § 1 of the Trust Agreement, "[t]he Board of Trustees shall have the power and authority to administer the Trust and Plan, and perform all acts, including those not specifically provided for in this Agreement, deemed necessary by the Board of Trustees to exercise and enforce all rights of the Trust and Plan, and to carry out their purposes."[2]  (Compl., Ex. 2, Art. V § 1.)  Article V § 2 goes on to provide that "[t]he Board of Trustees may compel and enforce the payment of the Contributions due *in any manner which it may deem proper*, subject to any rules established by the Board of Trustees for collection of delinquent Contributions."  (Id. Art. V § 2 (emphasis added).)  Article VIII § 7 states that "[t]he Board of Trustees *may take any action necessary* to enforce payment of the Contributions including, but not limited to, instituting proceedings at law or equity . . ."  (Id. Art. V § 7 (emphasis added).)

Finally, Article V § 3 of the Trust Agreement provides, in pertinent part:

> The Board of Trustees shall have full and complete authority and control over the Plan.  In operating and administering the Trust and Plan, the powers and/or duties of the Board of Trustees, or its designee, shall include, but not be limited to, the following: . . .
>
> (f) *To receive and collect all Contributions and other amounts due to and payable to the Trust.*  In doing so, the Board of Trustees, in their sole discretion, shall have the right to maintain any and all actions and legal proceedings necessary for the collection of the Contributions or payments provided for and required and the right to prosecute, defend, compromise, settle, abandon or adjust, *by arbitration or otherwise*, any such actions, suits, proceedings, disputes, claims, details and things.  The Board of Trustees has the power and authority to pay and provide for the payment of all reasonable and necessary expenses of collecting the Contributions or payments, and the power and authority to establish rules and regulations setting forth the method of collection of Contributions and payments, and when such matters should be settled or compromised.

---

[2] Section 403 of ERISA explicitly provides that, "upon acceptance of being named or appointed, the trustee or trustees shall have exclusive authority and discretion to manage and control the assets of the plan." 29 U.S.C. § 1103(a).

(Id. Art. V § 7(f) (emphasis added).)

Considering these provisions in conjunction with the presumption in favor of arbitration, I find no basis to stay the arbitration hearing. Wise concedes that it has made contributions to the Fund. (Compl. ¶ 7.) By so contributing, and thus receiving the benefit of coverage for its employees, Wise acquiesced to be bound to the Trust Agreement for the Fund. As the Trust Agreement grants the Board of Trustees broad authority to maintain actions, including arbitration, to resolve the collection of contributions, the unilaterally-scheduled arbitration hearing is proper.

In an effort to undercut this conclusion, Wise raises several new arguments in its Reply Brief.[3]

First, Wise contends that the Fund's Trust Agreement states that for an employer to be bound by that Trust Agreement, the employer must sign a CBA or other agreement, such as a "Participation Agreement," expressly binding the employer to such terms and conditions. The precise language in the Trust Agreement defines "Employer" as "any employer that has signed a Collective Bargaining Agreement or other agreement with the Union . . . obligating said employer to be bound by this Agreement, and the actions of the Board of Trustees calling for Contributions into the Trust, and has been accepted for participating in this Plan and Trust by the Board of Trustees." (Compl., Ex. 2. Art. I § 7.) Wise asserts that because the CBA does not require it to be bound to the Trust Agreement, and because the Fund admits that it does not use Participation Agreements, the Trust Agreement is not binding.

---

[3]     In my order granting Wise's request to expedite briefing on its Motion to Stay Arbitration, I ordered the Fund, who had not yet entered an appearance in the case, to file a response in less than a week. In doing so, I did not permit any additional briefing under the assumption that Wise, as the moving party, would have presented all of its strongest arguments and addressed anticipated responses in its original brief. Wise's original brief, however, was only four pages citing two cases for general principles regarding arbitration. Apparently aware that it had not fully addressed this issue, and confronted with a well-briefed response filed on an expedited basis by the Fund, Wise has now sought to file a reply brief. While I hesitate to allow this reply brief, I will do so for the sake of comprehensiveness and will consider the arguments raised therein.

11

The Ninth Circuit rejected a similar argument in Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp., 920 F.2d 1491, 1493 (9th Cir. 1990).  There, the employer, Miramar Hotel Corp. ("Miramar") maintained that the Fund was without power to audit the employer because (a) the collective bargaining agreement between Miramar and the Union was silent on the right to audit, and (b) the collective bargaining agreement failed to incorporate the terms of the trust agreement.  Id. at 1493.  Considering an almost identical definition of the "Employer" as in the Trust Agreement here, the Ninth Circuit concluded that while Miramar was "not a signatory to the Trust Agreement, it is undisputed that it contributed to the Fund and intended its employees to receive the benefits from the Fund.  Miramar would not make contributions if it did not intend its employees to receive benefits from the Fund." Id. at 1494.  The Court went on to note that "[i]f Miramar's employees are participants in the Fund, then it necessarily follows that Miramar is an employer under the Trust Agreement." Id.  Ultimately, the Court concluded that "Miramar and its employees cannot receive the benefits of the Fund yet escape its attendant burdens," which in that case involved permitting the trustees to audit an employer's books and records." Id.

Here, the Trust Agreement defines "employee" as "any person covered by a Collective Bargaining Agreement and who is engaged in employment with respect to which the Employer is obligated to make Contributions to the Trust, which Agreement is accepted by the Board of Trustees."  (Compl., Ex. 2, Art. I § 6.)  As Wise's employees are covered by the CBA, which obligates Wise to make contributions to the Fund, Wise is necessarily bound by the Trust Agreement, including the provision granting the Trustees broad discretion in how to resolve disputes over contributions.  To hold otherwise would allow Wise to "receive the benefits of the Fund yet escape its attendant burdens."  Miramar, 920 F.3d at 1494.

Second, Wise cites to an integration clause in the CBA that states:

12

> The parties agree that this Agreement incorporate[s] his or her full and complete understanding and that any prior written or oral agreements are superseded by the terms of this Agreement. The parties further agree that no such understanding will be recognized in the future unless committed to in writing and signed by the parties as a supplement to this Agreement.

(Compl., Ex. 1, Art. 29 § 2.) Wise contends that this provision explicitly makes the CBA the sole agreement relating to its subject matter and provides that no other terms and conditions can be imposed upon Wise without a signed written agreement.

Wise reads this provision too broadly. The CBA is a contract between Wise and the UFCW. The Trust Agreement, on the other hand, is an agreement between the Fund and the participating employers, including Wise. As the United States Supreme Court has noted, in the case of multiemployer trust funds, as is the case here, individual employers cannot, by collective bargaining agreement, "negate . . . the powers conferred on the trustees by the broader group of parties to the trust agreements." Schneider Moving & Storage Co. v. Robbins, 466 U.S. 364, 373 (1994).[4] To allow an individual employer to do so "would have an adverse effect on the other participants" to the fund. Id. Considering this principle here, it is reasonable to interpret the CBA's integration clause as applying only to other agreements between Wise and the Union, and not to the Trust Agreement between multiple employers and the Fund.

---

[4] Wise relies on Schneider to support its argument that it has not agreed to arbitrate. This argument is misplaced. In Schneider, the trustees of two multiemployer trust funds brought a judicial action for contribution against participating employers. Id. at 366–67. In a reverse situation from the case here, the employers, relying on collective bargaining agreements with the union, sought to enforce the arbitration provision in the collective bargaining agreements and require the trustees to arbitrate the contribution issue. Id. at 368. The Supreme Court declined to require arbitration, noting that the parties to the collective bargaining agreement could not "negate by their agreement" with the union the powers conferred upon the trustees by the trust agreement. Id. at 374.

Applying that same logic here, it is unreasonable to suggest that either Wise or UFCW intended to, or even could, limit the broad authority conferred upon the Fund's trustees by the Trust Agreements to resolve disputes over contributions to the Fund. Although the terms of the Trust Agreements in Schneider were incorporated by reference into the collective bargaining agreements, the absence of such incorporation by reference here does not undermine the fact that Wise participated in those Funds and, thus, bound itself to the Trust Agreement.

13

In light of the foregoing, I find that Wise is bound to the Trust Agreement, which provides the trustees with broad authority to initiate action—including arbitration—to enforce compliance with contribution obligations. As such, I decline to stay the April 9, 2021 arbitration.[5]

## IV.     CONCLUSION

For all of the foregoing reasons, I will deny Plaintiff's Wise's Motion to Stay Arbitration. An appropriate Order follows.

---

[5] The Fund also argues that, under the CBA, employers contributing to the Fund are required to submit remittance reports with their contribution payments. The Fund goes on to note that the remittance report form contains a "disclaimer" that, by submitting the remittance report, the employer agrees to all of the rules and regulations of the Fund as established by the Board of Trustees. According to the Fund, the Board of Trustees established a Collection Policy which expressly states that the fund may arbitrate a delinquent contribution dispute with an employer and select the arbitrator. The Fund reasons that, because Wise has submitted the monthly remittance reports, it has thus agreed to abide by the Fund's rules and regulations, which include the arbitration provision.
   While this argument may or may not have merit, it requires consideration of documents outside those attached to or relied upon in the Complaint. I may not consider those documents without converting this Motion into a motion for summary judgment under Federal Rule of Civil Procedure 56. In light of the time-sensitive nature of this Motion, and given that I can decide this issue without reference to external documents, I decline to consider this portion of the Fund's argument.